MURPHY vs. BALL and others.

Where A., owing money for services rendered by B., who is in the employ of C., pays the money to C., for such services, as if the latter were entitled to compensation therefor, instead of B., the receipt of the money by C., under such circumstances, while it does not prejudice B.'s right of recovery against A., if he have any, will not make the money B.'s, nor entitle him to main-tain an action against C., for money had and received by C. from A. for the plaintiff's use and benefit.

APPEAL from a judgment rendered on the verdict of a ju-ry, after a trial at the circuit.  The plaintiff was a night watchman, and watched the defendants' store for several years (from 1856 to 1861) at $2 per night, for which he re-ceived his pay periodically.  During two years of this time (from 1858 to 1860) he also watched the building of the Im-porters and Traders' Bank, adjoining that of the defendants. This he testified he did on the separate employment of the bank, for which the bank was to pay him, though the com-pensation was never fixed.  The defendants proved that they employed the plaintiff to watch the bank; that he agreed to do so without increased compensation, beyond such presents as the bank might make him; and that by arrangement with the bank, the bank was to pay them part of this expense of

Murphy *v.* Ball.

watching, to wit, $5 per week. This was the main dispute of fact, and the only one submitted to the jury. This $5 per week, amounting for the two years to $520, the bank paid to the defendants, and this action was brought to recover the amount, as money had and received to his use. The same witness by whom the receipt of the money by the defendants was proved, proved also that it was paid by the bank and received by the defendants as their money, under the arrangement above stated. The plaintiff testified that he never authorized the bank to pay the defendants for his services, nor the defendants to receive pay for them, and that they have always refused to pay the money received by them to him, claiming it as their own. Under this state of facts the defendants moved for a nonsuit, which motion was over-ruled, and the defendants excepted. The jury rendered a verdict in favor of the plaintiff for $520, and the defendants appealed.

*S. P. Nash,* for the appellants. The plaintiff's right of action, if any, was against the bank. He established no payment of money by the bank for his use, no reception of money by them for his use, no promise, express or implied, by the defendants to pay him any part of the money received from the bank, and no claim to the specific money they received.

I. In considering the cases in reference to the action for money had and received, there is one distinct class to be excluded from the present inquiry, viz. cases where the claim is for specific moneys, or for money the proceeds of property, to which the plaintiff establishes a *title.* Where A. owns money or property in the hands of B. he can follow it, or its proceeds, so long as he can trace them ; or, if A. be a creditor, and B. has property in his own hands, or in the hands of C., which he *appropriates* to the payment of his debt to A., A. becoming the owner of the property may claim its proceeds wherever he can find them, and by his own election constitute the holder his trustee, and sue him for money had and

received to his use. Such are the cases of *Berly* v. *Taylor,* (5 *Hill,* 577,) and *Cobb* v. *Dows,* (6 *Seld.* 335.) In cases of this character the proposition can hardly be stated too broadly, that if the defendant has money to which the plaintiff can make a *title,* as having been his originally, or become so by specific deposit to his use, or as being the proceeds of property to which he had the title, the plaintiff can sustain an action for money had and received. (*Cobb* v. *Dows, supra. Marsh* v. *Keating,* 1 *Bing. N. C.* 198.)

II. This class of cases does not govern the class to which the case at bar belongs; cases where the plaintiff never owned the property or money in question, but where he claims a right to it growing out of *contract,* express or implied. If A. has a deposit in bank belonging to him, and gives his creditor B. a check upon it, B. obtains no right to the fund by the mere delivery of the check; but if A., having money of B. in his hands, should deposit it in bank for the use of B., B. might have a right at once to consider the fund as his own; so if A. should deposit money of his own specifically to the use of B., or should appropriate the whole of a specific deposit. (*See Winter* v. *Drury,* 1 *Seld.* 525; *Chapman* v. *White,* 2 *id.* 412; *Mandeville* v. *Welch,* 5 *Wheat.* 286.) This illustration exhibits the three points that the plaintiff must establish to maintain an action for money had and received, where his claim arises out of *contract,* and not out of *title. First.* That the original owner paid over the money to the defendant to be appropriated to the plaintiff's use. *Second.* That the defendant received it for the purpose of paying it over. *Third.* That the creditor assented to such mode of payment. (1.) In every case that I have been able to find, there existed the first element above stated, viz. that the original debtor, owner of the money, paid it over to be appropriated to the plaintiff's claim, and in most of the cases the appropriation was express. In some it has been held that the original debtor might withdraw the money or property so appropriated, at any time before notice of the appro-

Murphy *v.* Ball.

priation given to the creditor, as will be subsequently seen. In *Murdoch* v. *Aikin*, (29 *Barb.* 59,) however, where money had been collected, and placed in the hands of town officers, to meet the interest on bonds issued by the town, it was held the appropriation was final, on the ground that the town had lost the right to give the money any other direction. In *Vaughan* v. *Matthews*, 13 *Q. B.*, (*Adol. & El. N. S.*, 66 *Eng. C. L.* 187,) the plaintiff was nonsuited because this element did not exist. (*See Hawkins* v. *Stark*, 19 *John.* 305 ; *Dodge* v. *Lean*, 13 *id.* 508 ; *Lawrence* v. *Fox*, 20 *N. Y. Rep.* 268.) (2.) The second requirement runs, generally, along with the first. If A. pays over money to B. for a specific purpose, B.'s receiving it at all is, ordinarily, evidence that he received it for that purpose. But there are cases in which it has been held that he may set up independent and adverse claims to the fund. (*Tiernan* v. *Jackson*, 5 *Pet.* 580. 2 *Story's Eq.* §§ 1041–1047. *Seaman* v. *Whitney*, 24 *Wend.* 260. *Yale* v. *Bell*, 3 *Barn. & Cres.* 683.) (3.) The third requirement above stated is of little consequence in this case, any further than it illustrates the general doctrine. The theory of the rule seems to be, that until the party for whose benefit the money is paid over has notice of the provision and assents to it, the matter is entirely between the depositor and the depositary, and the former may recall his money, as it still remains his, and at his risk. (*See Seaman* v. *Whitney*, 24 *Wend.* 260 ; *Williams* v. *Everett*, 14 *East*, 582 ; 2 *Story's Eq., ub. sup. ; Dey* v. *Murray*, 9 *John.* 171.)

III. In the case at bar, whatever else may be said of it, it cannot be said that there is any evidence whatever that the bank paid over the money in question to the defendants, on account of any debt the bank owed the plaintiff. There is no evidence that the bank acknowledged any indebtedness to him, and it is quite clear that the defendants received no money to pay any such indebtedness. The plaintiff's remedy is against the bank, and there was not the slightest excuse for his resorting to the defendants.

*Britton & Ely*, for the plaintiff. I. The jury, by their verdict, found, necessarily under the charge, that the plaintiff did not agree with the defendants that he would watch the bank without additional compensation. They had a right to find from the testimony that it was expressly agreed between the plaintiff and defendants that whatever the bank paid, the plaintiff was to receive. If the witness, Good, is to be believed, in watching the bank, the duty of the plaintiff was manifestly twofold in its character. He was to watch the bank on account of the defendants, for the greater security of their building, and also on account of the bank itself. This he did with the assent of the defendants, and in fact by agreement with them. The jury had a right to find, from the evidence, that there was an express agreement, not only by the plaintiff with the bank, but also with the defendants, that he was to receive whatever the bank would pay for services rendered them. The words " as a present," qualifying the words " if the bank choose to *pay* you any thing," he not then having disclosed to the plaintiff the fact that any arrangement had been made by the defendants with the bank, do not imply that it was not understood rightly from the language that whatever the bank would give, the plaintiff should receive. In this view of the evidence we have the defendants in possession of money received from the bank, which both the defendants and the bank had agreed should belong to the plaintiff. The law will in such a case imply the obligation on the part of the defendants to pay over to the plaintiff, on which an action can be maintained.

II. If the pleadings are informal or defective after verdict, the court will, in furtherance of justice, conform the pleadings to the facts. (6 *Duer*, 182. *Code*, § 169.)

III. But if the bank paid this money to the defendants, intending it as the money which the bank had agreed to pay the plaintiff, and the plaintiff had not agreed with the defendants that they were to have it, then this action can be sustained. The defendants object that there is no privity

between the plaintiff and the defendants, and that there is no trust. Neither is necessary, to maintain the action. (*Lawrence* v. *Fox*, 20 *N. Y. Rep.* 268.)

*By the Court,* EMOTT, J. The plaintiff was in the employ of the defendants, as night watchman, at a stipulated compensation. In December, 1857, he commenced, and·for two years thereafter continued, to watch also the premises of the Importers and Traders' Bank, which at that time adjoined the store of the defendants. The additional services which he thus performed might have been rendered under his original contract with the defendants. In that event he would not have been entitled to any additional compensation from any one, and any money or pay which the defendants obtained for his services would have belonged to them, because these services would have been entirely and exclusively their property. His additional services, again, might have been rendered under a new employment by the defendants, by which he was to receive additional compensation from them for watching the banking house, as a farther service rendered to them or at their request. If this were so, it would not sustain the present action, which is not brought for money earned by or due to the plaintiff from the defendants for such additional services, but for money received by the defendants from the bank to the use and benefit of the plaintiff. It may be added, that the evidence expressly negatives the supposition that the defendants agreed to pay the plaintiff any new or farther compensation for his additional services in watching the adjoining bank. A third supposition in regard to the plaintiff's employment and service, would be that he was expressly employed by the Importers and Traders' Bank to watch their premises in addition to the premises of the defendants, and that for this the bank was to pay him a compensation farther than what he was already receiving as the watchman of the defendants. This last supposition of facts as to the employment and services of the plaintiff must be

assumed or established as a preliminary to such an action as the present, and probably there is evidence upon which the jury might have come to such a conclusion. But this alone will not sustain the present action. An employment of the plaintiff by the bank, and an agreement to pay him a stated or a suitable compensation, would of course enable him to bring an action against the bank for such compensation. To such an action, provided the services were rendered, the bank could have no defense but payment. It may not be necessary to assert that this action cannot be maintained, unless the payment by the bank to the defendants operated as a payment to the plaintiff; but the mere facts that the bank was liable to pay the plaintiff for his services, and that they paid the defendants a sum of money for those services, would no more sustain the plaintiff in this action, than they would defend the bank in a suit against it by the plaintiff. The witness Good, who is in the employ of the defendants, testified that the defendants received $520 from the Importers and Traders' Bank for the watching of their building, $260 in January, 1860, and $260 in January, 1861, being at the rate of $5 per week for two years. It is not claimed or pretended that the plaintiff authorized or requested the defendants to collect or receive this money for him. He did not even know that it had been paid, until long afterwards. Nor is there any evidence that the bank paid the money to the defendants for the benefit of the plaintiff, or intending thus to discharge an indebtedness to him. As little proof is there that the defendants understood that this money was paid to them for the plaintiff, or accepted it as belonging to him. In truth, the case stands simply upon the allegation that the bank owed the plaintiff for certain services, and that it chose to pay a third person for these services of the plaintiff. Indeed, the payment was made to the defendants, as if they were entitled to control the services of the plaintiff, and as if they and not the plaintiff were entitled to compensation for them. The money was neither paid to them nor received by them

to the plaintiff's use, and its receipt under such circumstances, while it does not prejudice the plaintiff's right of recovery against the bank, if he have any, did not make the money his, or entitle him to claim it from the defendants, or to maintain the present action against them.

The judgment must be reversed, and a new trial ordered.

[ORANGE GENERAL TERM, September 8, 1862. *Emott, Brown, Scrugham* and *Lott,* Justices.]